Farbro Realty Corp. v. Commissioner.
Farbro Realty Corp. v. Commissioner
Docket No. 16091.
United States Tax Court
1948 Tax Ct. Memo LEXIS 147; 7 T.C.M. (CCH) 430; T.C.M. (RIA) 48126; June 29, 1948
*147 Arnold Finkenthal, C.P.A., 441 Lexington Ave., New York, N. Y., for the petitioner. S. P. Cadden, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This case involves deficiencies in income tax and declared value excess profits taxes for the taxable year ending April 30, 1944, in the respective amounts of $2,234.51 and $1,303.24. The petition alleges that a refund of $361.88 is due. Three questions are presented by allegations of error in the petition: (1) Whether capital gain from sale of real property is subject to deduction of $5,000 for services rendered by stockholders; (2) whether services by the stockholders in the sale requires deduction of $3,906; and (3) whether a second mortgage retained on the property sold, of the face value of $12,000, should be regarded as worth $12,000 in determining capital gain from the sale, or only the fair market value, alleged to be $8,000. Findings of Fact The petitioner is a dissolved corporation, organized with a capital of $30,000 in April1937 by Phillip Farbman (owning a 40 per cent interest), William Root (owning a 30 per cent interest), and Louis J. Root (owning a 30 per cent *148 interest). They were the officers. Farbman was treasurer. It filed its Federal income tax return for the taxable year with the collector for the third district of New York. In May 1940, after consultation with architects, construction of a six-story building was started. The three individuals received estimates, and negotiated letting of almost forty contracts to forty different trades, bought necessary materials, and supervised the construction of the building in its entirety until its completion in October 1940. The architect did no supervising. They also arranged the financing of the building by a mortgage loan. Later they managed the building. The three officers worked sometimes in the evenings, and Farbman most Saturdays and Sundays on the construction. He was not there all during the day. Farbman was not related to the Messrs. Root, who were brothers. The three stockholders were not architects or engineers but consulted with the architect on the plans and details of the construction. Farbman was in the plumbing contracting business. He was not a member of the real estate board of the Bronx, where the property was located. About October 1940, or shortly thereafter, they *149 decided that fair compensation for their efforts, work, and time should be $5,000. The corporation had no money, so they decided to leave the amount in the corporation as additional capital to be added to the cost of construction. The $5,000 was never actually paid out by the corporation. Early in 1943, they decided to sell the building. One Coburn introduced a prospective purchaser. After many conferences between the buyer, Root and Farbman, the property was sold, about June 1943, for $160,400. The first mortgage was $110,400, and they received cash of $38,000 and a second mortgage in the face amount of $12,000. The corporation paid a commission of $1,000 on the sale of the building. Only that amount was actually paid, and the $3,906 is claimed by the petitioner because of sale of its property by its officers. Petitioner's income, declared value excess profits, and defense tax return for 1940 showed total compensation to officers as $4,500; for 1941, showed $9,000; for 1943, as $5,500; and for 1944, $4,000. The $12,000 second mortgage was for a period of four years, amortizing quarterly, and 5 per cent interest. It was paid in June 1947, at which time Farbman owned it, having *150 bought it from the corporation after two years. It was then $8,000 and he purchased it for a 12 per cent discount. It was a second lien on a substantially fully occupied modern brick elevator apartment house of 5 1/2 stories, containing about 42 apartments. Farbman never tried to sell the mortgage after acquiring it, but kept it as an investment. The rates of real estate commission as promulgated by the Real Estate Board of the Bronx are: 5 per cent on the first $20,000; 2 1/2 per cent on the next $80,000 and 1 1/2 per cent up to $1,000,000. The average second mortgage in 1943 in the Bronx was selling for about 12 to 16 per cent discount. This is for the average, good, bad, and indifferent, new and old, not in regard to a new brick elevator apartment house fully rented, and 5 1/2 stories in height. Opinion The first question here is whether the corporation may, in determining capital gain on sale of its building, deduct $5,000 as cost thereof because of services of its sole stockholders and officers in construction. The amount was not paid, but the contention is that it was a claim against the corporation which was forgiven, therefore was a capital contribution. The difficulty *151 with such view is that there is no proof whatever that any debt was ever incurred by the corporation. No contracts, books, or records or minutes of the corporate stockholders or directors were offered in evidence or even referred to in the testimony. Nothing before us indicates that corporate action of any kind was ever taken. No evidence of the reasonableness of $5,000 as the value of the services was adduced. Though the respondent does not make a point of lack of proof of reasonable value of services, nevertheless, under all the facts before us, such question is not without significance. We have for consideration merely that the three men, who were sole stockholders and directors, assisted by management in the construction of the building and they decided $5,000 should be, therefore, added to cost. They never received the money; no record was made of capital contribution thereof. The situation is, in principle, not unlike that in William A. Brady Theatre Co., 16 B.T.A. 939, where compensation for personal services of the petitioner's stockholders was neither authorized, paid, nor accrued, and we denied deduction. See also Bailey Dental Co. of Iowa, 11 B.T.A. 860, *152 where salaries of the two stockholder-officers not authorized by corporate action were held not deductible expense, and G. Angelo Co., 12 B.T.A. 460, wherein, for lack of authorization, payment or accrual, compensation for personal services of stockholders was denied deduction. The cases cited by the petitioner are, therefore, of no assistance. We find no error on the part of the Commissioner in denying the claim for $5,000 cost of construction. We next consider the matter of commissions to the three stockholder-officers upon the sale of the building. The matter is thus regarded in the petition, as a matter of error in denying $3,906 as brokerage fees, but upon brief it is specifically stated that "it is not our conclusion that the officers were entitled to a brokerage commission for their services in negotiating the sale of the property," the contention being that the prevailing brokerage fees are cited only as a measure of value of services performed by the officers in connection with the sale, and that the Commissioner, in the determination of deficiency, erred in denying $3,000 out of $4,000 claimed for officers' salaries. So regarding the question, we are again *153 faced, as above, with lack of any corporate records authorizing payment of such compensation to the officers, and the above authorities apply fully. Moreover, it is obvious that the claim is, in fact, based upon alleged service in selling the property, yet we are not convinced, from the evidence, that the officers did so. A broker was paid $1,000 for such services and that deduction was allowed, and so far as the record before us shows he sold the property. He introduced the purchaser. Though Farbman and one of the Root brothers held many conferences with the buyer, this does not show sale made by them; nor does the vague expression "we finally sold the property." In general, a broker is entitled to the sales commission for introducing a purchaser. The $1,000 paid him appears to comprehend the broker's fee contemplated. That the schedule of brokers' fees prescribed by the Real Estate Board was greater does not at all prove that the broker did not sell the property. Farbman was not a broker and no evidence appears as to the Root brothers in that regard. We are altogether unconvinced that either $3,000. (now claimed as officers' services) or the $3,906 which the petition claims as sales *154 commission should be allowed as deductions. No error by the Commissioner in this respect is found. Finally we examine the contention that the second mortgage of face value of $12,000 received on sale of the property should not be regarded as of that value in computing the sales price but that a discounted figure representing fair market value should be used. The petition alleges the fair market value to be $8,000. On brief, the petitioner's argument is that the figure should be $12,000, reduced by $1,680, alleged to be a reasonable discount of the value of the second mortgage. On the facts, we can not agree. The mortgage was second to a first mortgage of $110,400 upon a property just sold for $160,400. It was amortized over four years, bore 5 per cent interest and was secured by a lien on a 5 1/2 story modern brick elevator-equipped apartment house of about 42 apartments substantially fully occupied. Farbman, two years later, when it was reduced to $8,000, purchased the second mortgage and held it as an investment, not attempting to dispose of it. He purchased at about 12 per cent discount. The mortgage was paid in June 1947. The evidence adduced as to reasonableness of discounts *155 on second mortgages, to the effect that the discount was from 12 to 16 per cent, was based as a general average upon mortgages good, bad, and indifferent, new and old, and not based upon the particular property or mortgage here involved. The witness was never in the property after completion, though he thought he had been during construction. His evidence was vague and unconvincing. We hold that it is not shown that the Commissioner erred in regarding $12,000 as fair value of the second mortgage. Decision will be entered for the respondent.